IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES,<br><br>Plaintiff,<br><br>vs.<br><br>SALLY JEWELL, in her official capacity as Secretary of the Department of the Interior; and DANIEL ASHE, in his official capacity as Director of the U.S. Fish & Wildlife Service,<br><br>Defendants. | CV 14–122–M–DWM<br><br>ORDER |

## INTRODUCTION

Plaintiff Alliance for the Wild Rockies ("Alliance") filed suit on April 22, 2014, seeking review of the United States Fish and Wildlife Service's ("the Service") November 22, 2013 finding that reclassifying the Cabinet-Yaak grizzly bear ("the bear") from "threatened" to "endangered" status under the Endangered Species Act ("ESA"), 16 U.S.C. § 1531, et seq., is "warranted but precluded." Alliance claims the preclusion finding is unlawful and that the Service has unreasonably delayed reclassification of the bear for 20 years. The Service insists the case is moot as a result of the Service's most recent December 5, 2014 finding

-1-

that reclassifying the bear from threatened to endangered is no longer warranted. The parties have filed cross motions for summary judgment. (Docs. 16, 26.) For the reasons stated below, the Service's motion is granted in part on the mootness issue. Plaintiff's motion is denied as moot.

**LEGAL BACKGROUND**

The ESA directs the Service to "determine whether any species is an endangered species or a threatened species because of any of the following factors: (A) the present or threatened destruction, modification, or curtailment of its habitat range; (B) overutilization for commercial, recreational, scientific, or education purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence." 16 U.S.C. § 1533(a)(1). The Service is required to make such determinations "solely on the basis of the best scientific and commercial data available." 16 U.S.C. § 1533(b)(1)(A).

Any "interested person" may petition the Service "to add a species to, or to remove a species from" the lists of threatened or endangered species. 16 U.S.C. § 1533(b)(3)(A). Within 90 days of receiving such a petition, the Service must make a "finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted."

*Id.* If the Service answers this question in the affirmative, it must, within 12 months after receiving the petition, issue one of the following findings ("12-month finding"): (i) not warranted; (ii) warranted; or (iii) warranted but precluded. 16 U.S.C. § 1533(b)(3)(B).

If the Service concludes that the listing is not warranted, the Service must publish its finding, and the listing process for that petition ends. 16 U.S.C. § 1533(b)(3)(B)(i). If the Service concludes that the listing is warranted, the Service must "promptly publish in the Federal Register a general notice and the complete text of a proposed regulation to implement" the listing ("proposed rule"). 16 U.S.C. § 1533(b)(3)(B)(ii). To make a warranted but precluded finding, the Service must conclude that although warranted, "the immediate proposal and timely promulgation of a [proposed rule] is precluded by pending proposals to determine whether any species is an endangered species or a threatened species, and . . . expeditious progress is being made to add qualified species" to the list of protected species and to remove species that no longer qualify. 16 U.S.C. § 1533(b)(3)(B)(iii). The ESA requires the Service to annually reevaluate the status of all species for which it has made a warranted but precluded finding and issue a new 12-month finding. 16 U.S.C. § 1533(b)(3)(C)(i).

**FACTUAL BACKGROUND**

The grizzly bear (*Ursus arctos horribilis*) was listed as a threatened species under the ESA in the lower 48 States in 1975. *See* 40 Fed. Reg. 31,734 (July 28, 1975). The Service approved a Grizzly Bear Recovery Plan in 1982 and revised the Plan in 1993. AR8995. The 1993 Plan established detailed recovery parameters for four main recovery zones, including the Cabinet-Yaak Ecosystem, AR9000, which is located in northwest Montana and northern Idaho. In 1991, the Service received its first petition to reclassify the Cabinet-Yaak grizzly bear from threatened to endangered. AR9563. The Service published its 12-month finding in 1993 and determined that reclassifying the bear was warranted but precluded. 58 Fed. Reg. 8,250 (Feb. 12, 1993). Each year since 1993, the Service has reevaluated the bear's status, has published a new 12-month finding on reclassification of the bear in its Candidate Notice of Review in the Federal Register ("the Notice"), and has determined every year that reclassification is warranted but precluded. AR0061.

In its 2013 finding, the Service determined once again that reclassification to endangered status for the bear is warranted but precluded by the Service's other, higher priority listing work identified in the Notice. 78 Fed. Reg. 70,104, 70,151 (Nov. 22, 2013). After Alliance filed its Complaint and before it filed its motion for summary judgment, the Service published its most recent 12-month finding. In

the 2014 finding, the Service determined that reclassification of the bear to endangered status is no longer warranted and that the bear will retain its threatened status because "[t]he population trend has now changed from declining to stable." 79 Fed. Reg. 72,487, 72,488 (Dec. 5, 2014).

Alliance claims the Service's 2013 preclusion determination is unlawful under 5 U.S.C. § 706(2)(A) because the Service failed to list the bear according to the bear's listing priority number and because the Service refused to request from Congress the funds necessary for the listing program. Alliance also claims that the Service's annual warranted but precluded determinations since 1993 constitute unreasonable delay under 5 U.S.C. § 706(1). Alliance asks the Court to compel the Service to "promptly publish a proposed listing rule . . . to list the bear as endangered and designate critical habitat by a reasonable and court-ordered deadline." (Amended Complaint, Doc. 8 at 29.) According to the Service, however, its 2014 finding renders the case moot.

## ANALYSIS

The Service insists that its 2014 determination that reclassification of the bear from threatened to endangered is not warranted renders the case moot because the Complaint only challenges the 2013 finding. Alliance does not dispute that the case is moot; instead, Alliance claims that the "voluntary

cessation" and "wrongs capable of repetition, yet evading review" exceptions to the mootness doctrine apply.

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." The case or controversy requirement continues throughout all stages of litigation, and "[t]here is thus no case or controversy, and a suit becomes moot, when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (internal quotation marks omitted). "[A] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* (internal quotation marks omitted).

The case is moot. The Service's 2014 not warranted determination supersedes its 2013 preclusion determination. 79 Fed. Reg. at 72,451. The 2014 finding also concludes the listing process for the outstanding petitions to add the bear to the endangered list. *See* 16 U.S.C. § 1533(b)(3)(B)(i). The Service is no longer statutorily required to reevaluate the status of the bear and publish another 12-month finding. *See* 16 U.S.C. § 1533(b)(3)(C)(i). The Service will be under no obligation to prepare a proposed rule and designate critical habitat unless and until an interested person again petitions the Service to add the bear to the endangered list and the Service determines that reclassifying the bear is warranted.

*See* 16 U.S.C. § 1533(b)(3)(B)(ii). Essentially, Alliance's requested relief—that the Court compel the Service to "promptly" prepare a proposed rule and designate critical habitat—is no longer available.

### A. Voluntary Cessation

Alliance insists that the case may nevertheless be decided because the Service's 2014 not warranted finding is a voluntary cessation. "Voluntary cessation saves an issue from becoming moot if the defendant voluntarily stops the allegedly illegal conduct to avoid a judgment against him, unless it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Forest Guardians v. U.S. Forest Serv.*, 329 F.3d 1089, 1095 (9th Cir. 2003) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). "The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Laidlaw*, 528 U.S. at 189 (internal quotation marks and alteration omitted).

The Service has met its heavy burden here. Alliance claims the Service's preclusion finding is unlawful and complains of its delay in adding the bear to the endangered list after making repeated warranted but precluded determinations. Had the Service voluntarily added the bear to the endangered list, prepared a

proposed rule, and designated critical habitat, the voluntary cessation exception may apply. However, the Service published a 2014 finding on the bear's status that is entirely different from its prior preclusion determinations, and that finding concluded the process for the outstanding petitions that generated the 12-month findings for the past 20 years. Essentially, the Service did not voluntarily cease the actual illegal conduct alleged in Alliance's Complaint. *See Ctr. for Biological Diversity v. Lohn*, 511 F.3d 960, 965 (9th Cir. 2007) (voluntary cessation exception did not apply where the Service did not voluntarily cease the challenged practice).

Additionally, "in order for this exception to apply, the defendant's voluntary cessation must have arisen *because of* the litigation." *Pub. Utils. Comm'n of Cal. v. F.E.R.C.*, 100 F.3d 1451, 1460 (9th Cir. 1996). Alliance contests the Service's reasoning for its 2014 finding, claiming that threats to the bear did not materially change between 2013 and 2014 to justify the Service's new not warranted determination after 20 years of warranted but precluded determinations. Alliance goes on to claim, therefore, that the Service made the not warranted finding because of this lawsuit. Yet, the Service explained its finding was based on a change in the population trend, established regulatory mechanisms to protect the bear, and documented movement between this and other bear populations. *See* 79

Fed. Reg. at 72,488. Despite the parties' ample briefing on the 2014 finding, the validity of that finding is not the subject of this case and cannot be decided in this case. For purposes of determining whether this case is moot, the Service's published explanation for its finding suffices to show that its decision did not arise *because of* this litigation. Furthermore, the Service notified Alliance that the Service intended to review and revise the bear's listing priority number due to the population's improved status in its February 10, 2014 response to Alliance's notice of intent to sue. AR0002. That notification further supports the conclusion that the Service's assessment of the bear was likely to change regardless of this litigation.

Finally, it is "absolutely clear" that the Service publishing a warranted but precluded finding as to the bear "could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 189. The 2014 finding ended the petition review process on the outstanding petitions and is subject to judicial review. 16 U.S.C. § 1533(b)(3)(B)(i), (C)(ii). Consequently, a new warranted but precluded finding can only recur under either a new lawsuit challenging the 2014 finding or a new petition process. On December 9, 2014, Alliance served the Service with a notice of intent to sue that challenges the lawfulness of the 2014 finding, and on December 11, 2014, Alliance filed a new petition to add the bear to the

endangered list. (Doc. 31 at 4–6.) But to say that the possible results of the lawsuit and the petition would adversely affect Alliance in the same way as it alleges in its Complaint here is simply too remote and speculative; it is not appropriate to speculate as to the outcome of those proceedings. *See Lohn*, 511 F.3d at 964 (purported "'adverse effect'" cannot be "'so remote and speculative that there [is] no tangible prejudice to the existing interests of the parties'" (quoting *Headwaters, Inc. v. B.L.M., Medford Dist.*, 893 F.2d 1012, 1015 (9th Cir. 1989)). Additionally, Alliance's argument that the Service made its finding because of this lawsuit and will sua sponte issue another warranted but precluded determination, *see* 50 C.F.R. § 424.15, is belied by the Service's obligation under the ESA to use the best scientific and commercial data available in making listing determinations. *See* 16 U.S.C. § 1533(b).

**B.     Capable of Repetition Yet Evading Review**

Alternatively, Alliance insists that the case may be decided because it falls within the "capable of repetition, yet evading review" exception. "The exception applies when (1) the duration of the challenged action is too short to allow full litigation before it ceases or expires, and (2) there is a reasonable expectation that the plaintiffs will be subjected to the challenged action again." *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1018 (9th Cir. 2012) (en banc). The

exception "applies only in exceptional situations," and both components must be "simultaneously present." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998).

Evading review means the challenged action "is almost certain to run its course before either [the Ninth Circuit] or the Supreme Court can give the case full consideration." *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1173 (9th Cir. 2002) (internal quotation marks omitted). The durational component is met here. The Service's 12-month findings, which are in effect for one year, satisfy the exception "because a year is not enough time for judicial review." *Id.* Although the Service no longer has an obligation under the ESA to make an annual 12-month finding for the bear after its 2014 not warranted determination, *compare* 16 U.S.C. § 1533(b)(3)(C)(i) *with* (C)(ii), the Service does have an obligation to make another 12-month finding in response to Alliance's recent petition, 16 U.S.C. § 1533(b)(3)(B). Alliance has also shown that it will continue to bring petitions so long as the bear remains on the threatened list, and with each new petition comes another 12-month finding requirement. The Service argues that reclassification of the bear had been precluded for 20 years, which was sufficient time for judicial review of the preclusion determinations. But those who wish to challenge the Service's findings cannot rely on the Service making the same finding every year—as demonstrated by the 2014 finding.

For the capable of repetition component, "the same controversy [is] sufficiently likely to recur when a party has a reasonable expectation that it will again be subjected to the alleged illegality." *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 463 (2007) (internal quotation marks omitted). Alliance has not demonstrated a *reasonable expectation* that it will be subjected to a warranted but precluded determination again for two reasons. First, repetition of the alleged illegality is too speculative. The Service based its 2014 finding on its assessment that the bear population is now stable. Another warranted but precluded determination would therefore require either a change in the bear's population trend such that the Service finds that reclassification is warranted or a court determination that the Service's 2014 finding was unlawful. Alliance insists the Service's 2014 finding is wrong because the bear's population is actually declining, but the validity of the Service's current assessment of the bear cannot be decided in this case. Thus, either a future warranted determination or the success of Alliance in its future lawsuit represent "a speculative possibility [that] does not constitute a 'reasonable expectation.'" *W. Coast Seafood Processors Ass'n v. Natural Resources Defense Council, Inc.*, 643 F.3d 701, 705 (9th Cir. 2011).

Second, a future warranted but precluded determination would be based on markedly different circumstances such that it could not reasonably be considered a

repetition of Alliance's claims in this case.  In its argument, Alliance fails to acknowledge the unique posture of the case as it now stands.  The Service is no longer in a position to make another preclusion finding on the petitions that formed the basis for the findings from 1993 to 2013.  Another preclusion finding could only arise out of either a new petition or a court order, which will be based on new data and assessments of the bear's condition (data and assessments that have not yet been tested in a court of law and cannot be tested in this case), and new circumstances concerning the Service's workload and budget.  Alliance insists the bear's status is so tenuous that the Service could reasonably make another warranted finding, and the Service has demonstrated a propensity toward finding that reclassification of the bear is precluded by its higher priority listing work and its budgetary constraints.  Nevertheless, any future warranted but precluded determination would simply be based on a scenario that would not be the same controversy.

Buttressing the conclusion that this case is moot are the numerous filings by the parties that relate to the Service's 2014 finding and the new litigation initiated by Alliance as to that finding.  (*See* Docs. 26-1, 31, 33-1, 35-2, 35-3, 35-4.)  This case is morphing into a case about the 2014 finding, yet that finding is properly the subject of a different lawsuit.  At this juncture, it is impossible to "grant any

effectual relief" as to the 2013 finding or the 19 findings that came before.

Accordingly, IT IS ORDERED that Defendants' motion (Doc. 26) is GRANTED in part and DENIED in part. This case is DISMISSED as MOOT. Plaintiff's motion (Doc. 16) is DENIED as moot.

IT IS FURTHER ORDERED that the Clerk of Court is directed to enter judgment and close this case.

DATED this 8th day of May, 2015.

_____
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT